OPINION
{¶ 1} Appellant Dirk Martin appeals the December 15, 2005 Entry of Opinion entered by the Guernsey County Court of Common Pleas, which affirmed the May 11, 2005 Decision of the Cambridge Civil Service Commission, finding appellee City of Cambridge ("the City") properly followed the layoff procedures and the City's actions did not constitute bad faith or subterfuge in effectuating appellant's layoff.
 STATEMENT OF THE FACTS AND FACTS {¶ 2} Appellant worked as an engineering technician in the Engineer's Department of the City of Cambridge. Appellant, who was the only engineering technician for the City, reported directly to the City Engineer/Utilities Director, Paul Sherry. The position of engineering technician was funded by the City's General Fund.
 {¶ 3} In December, 2003, appellant was terminated from his position for disciplinary reasons. The Cambridge Civil Service Commission ("the Commission") subsequently disaffirmed the termination, and ordered the City to reinstate appellant to his position. The City notified appellant he should return to work on November 1, 2004. On November 9, 2004, John Jones, the City Safety/Service Director, and Paul Sherry presented appellant with a layoff notice, effective November 28, 2004. The notice informed appellant he would be on administrative leave from November 9, through November 24, 2004. The City advised appellant his layoff was due to a current and projected lack of funds. The City's financial status had caused the vacation of a number of other positions between 2003, and 2004, through layoffs, attrition, and retirements. Appellant appealed to the Commission. The Commission conducted a hearing on February 8, 2005. *Page 3 
 {¶ 4} At the hearing, Sue Ellen Johnson, the City Auditor, testified, over the last couple of years, the City had been experiencing problems with revenues and expenditures in the General Fund. Johnson explained the financial problems were the result of lower interest rates, which affected the amount of money the City generated from its investments; the rising cost of health insurance for employees; and the State decreasing the amount of assistance money to the City. Johnson added, between 2000, and 2003, municipal court revenues were down $64,000; interest income was down $82,000; and the City's health insurance expenses had increased over 56%. Johnson stated the City expected a 6% shortfall in anticipated revenues for 2004. Johnson testified she expressed her concerns regarding the financial problems to City Counsel and the Finance Committee, as well as the mayor and the Safety/Service Director. The mayor subsequently instructed all department heads to refrain from discretionary spending. Johnson noted, based upon the current budget and the anticipated revenues and expenditures for 2005, the City would not have adequate funds available to address any unanticipated expenses which might arise in 2005.
 {¶ 5} John Jones, the Safety/Service Director, testified his job responsibilities include supervising department heads and foremen, as well as all departments within the City, including engineering, police, and fire. Jones detailed how the City's financial condition impacted negotiations with the police, fire, and non-safety union employees. Johnson described the continued efforts of the City to cut costs by negotiating wage freezes with all bargaining unit employees and increasing all bargaining unit and non-bargaining unit employees' health insurance premium contributions. Despite these *Page 4 
efforts, the City was forced to eliminate sixteen positions between March, 2003, and December, 2004.
 {¶ 6} Paul Sherry, the City Engineer/Utilities Director, testified appellant reported directly to him. In early, 2003, Sherry began a cooperative student program with local colleges and universities in order to give students an opportunity to gain exposure in engineering and utilities fields. The students were not considered employees of the City, and were paid in the same manner in which the City paid its contractors and vendors. During 2004, the City had two interns in the engineering department. Kevin Hardy, the last intern, worked the summer and fall terms. This work experience was a requirement for Hardy's cooperative education program. Despite the City's financial situation, Hardy remained in the intern position in the fall, 2004, because Sherry had made a commitment to Hardy and his college that Hardy could work a minimum of two terms. Hardy did not perform appellant's job duties in appellant's absence. Sherry added the City did not currently have any college interns or engineering technicians on staff. Sherry did not participate in the decision to lay off appellant, but was aware of such, and, after examining the budget, determined the department could no longer afford appellant.
 {¶ 7} Following the presentation of evidence, the parties submitted post-hearing briefs. On May 11, 2005, the Commission rendered its decision, affirming appellant's layoff. The Commission found the City properly determined a layoff due to lack of funds was necessary; properly followed the layoff procedures; and did not engage in bad faith or subterfuge in effectuating appellant's layoff. Appellant filed a timely notice to appeal to the Guernsey County Court of Common Pleas. After reviewing the record, the trial *Page 5 
court affirmed the Commission's decision. The trial court memorialized its decision via Entry of Opinion filed December 15, 2005.
 {¶ 8} It is from this entry appellant appeals, raising the following assignments of error:
 {¶ 9} "I. THE COURT ERRED IN FAILING TO APPLY THE CLEARLY APPLICABLE RULES OF THE CIVIL SERVICE COMMISSION AND O.R.C. § 124.321 REQUIRING THE LAYOFF OF PART TIME AN [SIC] PROVISIONAL EMPLOYEES PRIOR TO THE LAYOFF OF FULLTIME CIVIL SERVICE EMPLOYEES.
 {¶ 10} "II. THE COMMON PLEAS COURT AND THE CIVIL SERVICE COMMISSION ERRED IN UPHOLDING THE LAYOFF OF MARTIN WHERE THE EVIDENCE PROFFERED IN SUPPORT OF THE LAYOFF WAS CREATED AFTER IT WAS ACCOMPLISHED AND WAS NOT CONSIDERED AT OR ABOUT THE TIME OF THE ACTION.
 {¶ 11} "III. THE COURT ERRED IN FAILING TO ADDRESS THE QUESTION AS TO WHETHER THE LEGAL DISTINCTION BETWEEN A LAYOFF AND A JOB ABOLISHMENT WAS APPLICABLE AND THAT THE CITY FAILED TO FOLLOW THE APPLICABLE RULES AND LAWS WITH RESPECT WITH RESPECT TO A JOB ABOLISHMENT.
 {¶ 12} "IV. THE COURT ERRED IN NOT ADDRESSING OR DETERMINING THE CLAIM OF APPELLANT THAT THE LAYOFF WAS A SUBTERFUGE FOR THE PURPOSE OF THE "LAYOFF" WAS TO DISCHARGE APPELLANT AND CIRCUMVENT THE EARLIER DECISION OF THE COMMISSION AND COURT DISMISSING THE APPEAL." *Page 6 
 Standard of Review {¶ 13} When reviewing an administrative appeal pursuant to R.C. 2506.04, the trial court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Henley v. YoungstownBd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147. The trial court may "affirm, reverse, vacate, or modify the order, * * * or remand the cause to the officer or body appealed from with instructions to enter an order, * * * consistent with the findings or opinion of the court." R.C. 2506.04.
 {¶ 14} The standard of review to be applied by an appellate court in an R.C. 2506.04 appeal is "more limited in scope." Id. at 147, quotingKisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. In Henley, the Ohio Supreme Court explained:
 {¶ 15} "[R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court." [Kisil, 12 Ohio St.3d] at fn. 4 "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Id. at 147, quoting *Page 7 Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261.
 {¶ 16} As explained by the Ohio Supreme Court in Henley, a "question of law" is "[a]n issue to be decided by the judge, concerning the application or interpretation of the law." Id. at 148, citing Black's Law Dictionary (7 Ed. 1999) 1260.
 I {¶ 17} In his first assignment of error, appellant maintains the trial court erred in failing to apply R.C. 124.321 and the applicable Commission rules, which provide for the order of layoffs for categories of employees.
 {¶ 18} R.C. 124.321 provides, in relevant part:
 {¶ 19} "(A) Whenever it becomes necessary for an appointing authority to reduce its work force, the appointing authority shall lay off employees or abolish their positions in accordance with sections 124.321
to 124.327 of the Revised Code and the rules of the director of administrative services."
 {¶ 20} In accordance with R.C. 124.321, the City was required to lay off employees in the order set forth in R.C. 124.323. That statute reads:
 {¶ 21} "(A) Employees shall be laid off in the order set forth in this section within the primary appointment categories of part-time, seasonal, and full-time, and other appointment categories as established by the director of administrative services.
 {¶ 22} "(B) Whenever a reduction in force is necessary within each of the primary appointment categories, first seasonal, then part-time permanent, and then full-time permanent employees shall be laid off in the following order: *Page 8 
 {¶ 23} "(1) Employees serving provisionally who have not completed their probationary period after appointment;
 {¶ 24} "(2) Employees serving provisionally who have satisfactorily completed their probationary period after appointment;
 {¶ 25} "(3) Employees appointed from certified eligible lists or who are certified and who have not completed their probationary period after appointment;
 {¶ 26} "(4) Employees appointed from certified eligible lists or who are certified and who have successfully completed their probationary period after appointment."
 {¶ 27} In addition, the City has prescribed Rule VII, Section 2 with respect to layoffs. The rule provides, "whenever it becomes necessary in any office or department other then the police and fire departments through lack of work or lack of funds to reduce the number of employeeswithin a class, provisional appointees, if any, shall be laid off first and probationary appointees, if any, shall be next to be laid off * * *". (Emphasis added).
 {¶ 28} Appellant argues by retaining a student intern in the engineering department, the City violated the applicable statutory provisions as well as the City's civil service rules dealing with layoffs of civil service employees. We disagree.
 {¶ 29} The record reveals, at the time of appellant's layoff, Kevin Hardy, a student from the Ohio University, College of Engineering, was interning in the engineering department. In June, 2004, Paul Sherry committed to Ohio University and Hardy the department would keep him for a minimum of two terms, the summer and fall semesters. The intern position was paid as if the student was a contractor or vendor *Page 9 
with the City. Appellant claims the intern was a provisional employee and, as such, Hardy should have been laid off before he (appellant) was laid off.
 {¶ 30} Based upon the testimony at the Commission hearing, we find the intern was not a provisional employee. Additionally, R.C. 124.323
provides for the order of layoff within a primary appointment category. The intern did not fall within the same category as appellant. John Jones, the Safety/Service Director, determined the category of the "engineering technician" was to be affected by the layoff. Appellant was the only employee, part-time, fulltime, provisional or otherwise, in the category. The fact appellant was the only employee in his category does not equate to the City's failure to follow the statutory procedure. We find the trial court properly determined the Commission's decision on this issue was supported by the preponderance of substantial, reliable, and probative evidence.
 {¶ 31} Appellant's first assignment of error is overruled.
 II {¶ 32} In his second assignment of error, appellant asserts the trial court and the Commission erred in affirming appellant's layoff as the evidence presented by the City in support of the layoff was created after such had happened and had not been considered at or about the time of the action.
 {¶ 33} R.C. 124.321 authorizes a city to layoff employees as a result of a lack of funds within the appointing authority. That statute reads, in relevant part: "(B)(1) Employees may be laid off as a result of a lack of funds within an appointing authority. * * * [T]he appointing authority itself shall determine whether a lack of funds exists and *Page 10 
shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the layoff notice."
 {¶ 34} In a November 8, 2004 correspondence, John Jones advised the Commission the City was forced to lay off the engineering technician in the engineering department due to a lack of funds in the General Fund. Such written notice was a statutory requirement. Appellant submits this correspondence is contradicted by the exhibits which were in existence prior to his layoff. Specifically, appellant points to fact finding decisions made during the City's negotiations with the police and firefighters. Appellant maintains these documents establish the City had sufficient funds in which to give the police and fire departments wage increases in 2005, and 2006; therefore, any assertion by the City it did not have the funds to pay appellant's wages was disingenuous.
 {¶ 35} Although the documents upon which appellant relies show the City made wage concessions during contract negotiations with the police and fire departments, we cannot find, given the additional evidence presented to the Commission, the trial court's affirmation of the Commission's decision regarding appellant's layoff was not supported by the preponderance of substantial, reliable, and probative evidence.
 {¶ 36} Appellant's additionally asserts the exhibits presented by the City at the Commission hearing did not exist at the time of the notice of his layoff, but were made after the fact to bolster the City's position. We find such assertion to be without merit. Although the information may have been compiled subsequent to appellant's receipt of the notification of layoff, city officials were aware of the financial problems well before they made the decision to make layoffs. The compilation of documents to support the *Page 11 
position at a subsequent hearing does not mean the conditions were not extant at the time appellant was notified of the layoff.
 {¶ 37} Within his second assignment of error, appellant argues the City did not submit supporting documentation with the statement of rationale sent to Commission as required by R.C. 124.321(B). Appellant does not reference where in the record he objected to the sufficiency of the notice he received; therefore, we find any error waived. Further, because appellant did not separately assign this issue as error, we are not required to address such.
 {¶ 38} Appellant's second assignment of error is overruled.
 III {¶ 39} In his third assignment of error, appellant submits the trial court erred in failing to address the applicability of the legal distinction between a layoff and a job abolishment, and whether the City followed the applicable rules and laws with respect to a job abolishment. Essentially, appellant argues the City's termination of his employment was, in fact, a job abolishment, which is significantly different from a layoff and requires a different procedure be followed before such can be accomplished.
 {¶ 40} Although in his brief to this Court, appellant states he raised and argued this issue before the trial court and the Commission, he has failed to reference where in the record he objected to such as required by App. R. 16(A)(3). Therefore, we find we are not required to address this argument.
 {¶ 41} We note, pursuant to R.C. Chapter 123, an appointing authority is permitted to reduce its workforce either through layoff of employees or abolishment of positions. The City is the appointing authority herein. R.C. 124.321(B) gives the City *Page 12 
the authority to determine whether a lack of funds exists and whether layoffs are necessary. We find the evidence presented to the Commission supports the City's determination.
 {¶ 42} Appellant's third assignment of error is overruled.
 IV {¶ 43} In his final assignment of error, appellant asserts the trial court erred in failing to address or determine his claim the layoff was a subterfuge as the City's purpose for the layoff was to effectuate a discharge of appellant and circumvent the Commission's earlier decision ordering his reinstatement.
 {¶ 44} Upon review of the entire record in this matter, we find no evidence to indicate bad faith or subterfuge on the part of the City in deciding to layoff appellant. The evidence supports the Commission decision and trial court's affirmance thereof, the City laid off appellant in good faith, in an attempt to address the City's financial difficulties. Although the timing of appellant's layoff may seem dubious, the record shows he was not the only employee to be laid off.
 {¶ 45} Appellant's final assignment of error is overruled. *Page 13 
 {¶ 46} The judgment of the Guernsey Court of Common Pleas is affirmed.
 Hoffman, J. Gwin, P.J. and Wise, J. concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Guernsey County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1